PHILLIP A. TALBERT
Acting United States Attorney
BRIAN W. ENOS
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>      v.<br><br>JOHN ALAN WILLIAMS,<br><br>               Defendant. | Case No. 1:12-cr-00420 DAD<br><br>**THE UNITED STATES' SENTENCING MEMORANDUM AND FORMAL RESPONSE TO PRESENTENCE INVESTIGATION REPORT**<br><br>Date: October 31, 2016<br>Time: 10:00 a.m.<br>Ctrm: 5<br><br>Hon. Dale A. Drozd |

### I.     INTRODUCTION

On November 29, 2012, the grand jury returned a two-count indictment against defendant John Alan Williams ("defendant"), charging him with separate counts of Receipt and Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) (Counts One and Two). Doc. 1.

The parties' resolution of this matter followed multiple rounds of in-depth negotiations that spanned many months. A brief explanation regarding how the parties ultimately resolved this case will help the government explain the sole distinction between the Sentencing Offense Level reached by the parties in the plea agreement (30) from that identified by U.S. Probation (34) within the Presentence Investigative Report ("PSR"). Doc. 24, paras. 3(h) and 4(b); Doc. 51, pp. 4 and 8. Notably, the PSR's recommended sentence of 97 months is nevertheless in accord with the government's identical recommended sentence of 97 months, and which lies at the low end of the applicable incarceration range

attendant to a Sentencing Offense Level 30 (97-121 months), the level to which the parties agreed within the plea agreement. Doc. 24, paras. 3(h) and 4(b); Doc. 51, p. 4.

To explain, after several discussions about the evidence in this case and its potential resolution, the government sent defense counsel an initial draft plea agreement as an attachment to an email message delivered on June 7, 2013. As explained in detail below, it contemplated an aggregate sentencing level of 30, which at the time was consistent with plea offers prior defendants received who had received child pornography through the use of Peer to Peer file sharing software and had engaged in similar conduct. See 18 U.S.C. § 3553(a)(6).

Although (in the government's view) the parties had by this time tentatively reached an agreement regarding the resolution to this case, it remained unsigned through the publication of United States v. Vallejos, 742 F.3d 902 (9th Cir. 2014). Vallejos held, among other things, that a defendant's "knowing use" of a file-sharing program to download child pornography involved not just receipt of child pornography, but distribution. Vallejos, 742 F.3d at 908. In contrast to receipt of child pornography, distribution involves an application of four additional sentencing levels, consisting of (1) a Base Offense Level increase of two levels (22 for distribution versus 20 for receipt) pursuant to U.S. Sentencing Guidelines Section 2G2.2(a)(2), as well as (2) an additional two levels pursuant to Section 2G2.2(3)(F).

After numerous additional post-Vallejos rounds of negotiations regarding the resolution of this case, the government agreed to honor the terms of its initial plea offer delivered to the defense in June 2013. This plea agreement, drafted pursuant to Fed. R. Crim. P. 11(c), was executed and filed on June 15, 2015. Doc. 24. Defendant entered his change of plea before this Court on August 8, 2016, and sentencing was set for October 31, 2016. Doc. 45.

United States Probation issued its draft PSR on September 19, 2016, and issued a revised PSR on October 11, 2016. Doc. 51.

## II.     THE PARTIES' AGREED GUIDELINE CALCULATIONS

As aforementioned, the parties agreed to a sentencing level 30 within the plea agreement. Doc. 24, paras 3(g) and (h) and 4(a) and (b). As set forth in detail therein and pursuant to Section 2G2.2 of the Sentencing Guidelines (2015), these agreed guidelines include a base offense level of **20** for receipt

of child pornography (§ 2G2.2(b)(1), *plus* **2** levels for use of computer (§ 2G2.2(b)(6), **2** levels for possessing sexually explicit images of prepubescent minors and/or children under twelve years of age (§ 2G2.2(b)(2), **5** levels because the offense involved more than 600 images of child pornography (§ 2G2.2(b)(7)(D) and **4** levels for possessing sexually explicit images of minors that involve the portrayal of sadistic, masochistic or other depictions of violence (§ 2G2.2(b)(4) (for an aggregate level 33), *minus* **3** levels based upon defendant's acceptance of responsibility, for adjusted level of 30. Id. Defendant also agreed to a post-incarceration term of supervised release of 180 months. Doc. 24, para. 3(i).

Notably, other than applying the above four-levels of distribution enhancements in light of the Ninth Circuit's 2014 publication of United States v. Vallejos, U.S. Probation identified the sentencing enhancements as those identified in the parties' plea agreement. PSR, paras. 15-28. Significantly, U.S. Probation likewise recommends that the court impose a 97-month term of incarceration, a variance downward from an adjusted sentencing level 34 to the bottom of the sentencing range applicable to level 30. Doc. 51, p. 4.

For reasons set forth in the plea agreement, the PSR, as well as below, the government endorses the terms of the parties' Rule 11(c) plea agreement and U.S. Probation's sentencing recommendation of 97 months. The government is further mindful of its obligation to stand by the scope of the sentencing calculations and recommendations included in the plea agreement, including the agreed-upon applicable guideline level contemplated in the same. See United States v. Alcala Sanchez, 666 F.3d 571, 575-577 (9th Cir. 2012). The government therefore stands by the terms of the parties' plea agreement, and asks the Court to endorse them at sentencing, and to sentence defendant to a term of imprisonment of 97 months.

### III. THE GUIDELINES AND § 3553(a) FACTORS SUGGEST THE PARAMETERS OF A REASONABLE SENTENCE

Whereas the Sentencing Guidelines were once "mandatory", they must now be consulted in an "advisory" capacity in that a sentencing court now must also consider factors outlined at 18 U.S.C. § 3553(a). Those factors include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed

    (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) To afford adequate deterrence to criminal conduct;

    (C) To protect the public from further crimes of the defendant; and

    (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The kinds of sentence and the sentencing range established for

    (A) The applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines (I) issued by the Sentencing Commission…

(5) Any pertinent policy statement -

    (A) Issued by the Sentencing Commission . . .

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) The need to provide restitution to any victims of the offense.

Here, consideration of the factors identified within 18 U.S.C. § 3553(a) supports an imprisonment term consistent with the parties' agreed guideline range and the PSR's recommended sentence.

To wit, Subsections (3) and (4) provide that a court "shall consider . . . the kinds of sentences available" and "the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant, as set forth in the guidelines." Subsection (5) requires a court to consider "any pertinent policy statement ... issued by the Sentencing Commission."

Perhaps most important to the court's analysis in determining a sentence are Subsections (2) and (6) of 18 U.S.C. § 3553(a). Subsection (2) requires the court to consider the need to "reflect the seriousness of the offense", "afford adequate deterrence" and "protect the public." In the case of child exploitation prosecutions, the government has a compelling interest to protect children from those who would exploit them. As justification for the imposition of significant sentences in child exploitation

offenses, the Supreme Court has held "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982).

Furthermore, subsection (6) addresses the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This makes sense, because imposing a sentence on defendant that is heavier than this court has imposed on those who the government could prove committed similar conduct is unfair to defendant, and a sentence imposed on this defendant that conversely is lighter than others is unfair to previously sentenced defendants. In this case, this is the provision upon which the government relied in agreeing to honor its original plea offer in this case. Defendant's alleged conduct took place in 2011. At that time, Peer to Peer defendants were allowed to plead guilty to receipt of child pornography, rather than distribution, so long as the file evidence did not establish that the Peer to Peer user had actually distributed child pornography files to others. Accordingly, the government believed, and continues to believe, that defendant was properly offered the receipt count in resolving this case.

## IV. RESTITUTION

"[T]he court shall order restitution" pursuant to convictions of crimes including those committed in violation of 18 U.S.C. § 2252(a). 18 U.S.C. § 2259(a). "The order of restitution … shall direct the defendant to pay the victim … the full amount of the victim's losses as determined by the court." 18 U.S.C. § 2259(b)(1). The issuance of a restitution order under Section 2259 is indeed mandatory. 18 U.S.C. § 2259(b)(4)(A).

The term "full amount of the victim's losses" includes any costs incurred by the victim for:

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred; and

(F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2259(b)(3)(A) through (F).

Federal courts may order restitution to the extent authorized by statute. United States v. Kennedy, 643 F.3d 1251, 1260 (9th Cir. 2011) (citing United States v. Gossi, 608 F.3d 574, 577 (9th Cir. 2010)). Section 2259 is the statutory mechanism that allows for a restitution order regarding this action's known victim who made a restitution claim, and regarding those losses and other harms caused by the offense of conviction. Paroline v. United States, 134 S.Ct. 1710, 1720 (2014). The burden is on the government to establish, by a preponderance of the evidence, the existence of a causal connection between the victim's losses and the defendant's conduct in order to meet the requirements of § 2259. Kennedy, 643 F.3d at 1262. If it is impossible to trace a particular amount of a victim's claimed losses to an individual defendant, then sentencing court applying § 2259 should order a restitution amount comporting with defendant's relative role in the causal process that underlay the victim's general losses. Paroline, 134 S.Ct. at 1715.

In addition, in United States v. Galan, 804 F.3d 1287 (9th Cir. 2015), the court held that a person who participates in the distribution, receipt or possession of child pornography cannot be required to pay restitution for losses caused by the original abuser's actions; instead, the losses must be disaggregated. Id. at 1290-91; See also United States v. Grovo, 826 F.3d 1207, 1222 (9th Cir. 2016). The Galan court provided examples of factors that may affect the apportionment, or disaggregation, in a particular case: "egregiousness of the original abuse; how a victim can (or does) cope with that kinds of abuse when distribution of images does not follow; and the particular victim's own reactions to the various traumas to which the victim has been subjected." Galan, 804 F.3d at 1291. The court further noted that "precision is neither expected nor required" in apportioning the losses, and that "the ultimate question will be a mix of 'discretion and estimation.'" Id. (quoting Paroline v. United States, 134 S.Ct. 1710, 1729 (2014)).

In this case, the government received a restitution request in September 2014 from counsel for "Cindy", a known minor victim identified by the National Center for Missing and Exploited Children in Alexandria, Virginia and identified within 29 images within defendant's computers and hard drives. No evidence has been received however suggesting that defendant knew, or had ever met, "Cindy." Accordingly, at sentencing the government anticipates asking the court to order a restitution amount commensurate with other similarly situated defendants, when applied to victims able to provide similar

information to the court, in this regard.  If the court feels as if it needs further information prior to issuing an order for restitution, then it may do so within 90 days of sentencing in a manner that does not impact other components of its sentence.  18 U.S.C. § 3664(d)(5).

### V.　　CONCLUSION

Based on the evidence underlying the plea agreement and PSR, as well as the information provided in support of "Cindy's" restitution request, the government respectfully requests that the Court sentence defendant to a 97-month term of incarceration, followed by a 180-month term of supervise release.  The government further requests the court to order restitution in an amount commensurate with what other similarly situated victims who have requested restitution in other cases have been awarded upon presenting similar evidence to the court.  Counsel for the government will appear at sentencing prepared to provide the court with examples of prior restitution amounts awarded to victims in child pornography cases by judges in this courthouse from prior cases.

Respectfully submitted,

PHILLIP A. TALBERT
Acting United States Attorney

Dated: October 17, 2016　　　　　　　　　By: /s/ Brian W. Enos
　　　　　　　　　　　　　　　　　　　　BRIAN W. ENOS
　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney